We'll hear argument now in the case of Stieglitz v. Chicago. Mr. Handler Good morning. May it please the court, counsel. My name is Joel Handler and I represent the appellant plaintiff, David Stieglitz. We're seeking a reversal of the summary judgment that Judge Seeger entered in this case on both counts of Mr. Stieglitz's amended pleading. Every issue, when you look at both the opinion of Judge Seeger as well as the brief of the City of Chicago, every fact that Judge Seeger relied on to enter summary judgment, there are genuine issues of material fact with regard to each one of them. With regard to count one, which is the reverse race discrimination claim, you have whether Captain Clay requested that Stieglitz permanently transfer to truck 19. You have a situation where a driver rotation... Mr. Handler, can I ask you a question? I'm aware of all these facts, but I have a hard time seeing what any of this has to do with race. I understand that the captain is black and the two drivers are black and that your client is white. Other than that, what evidence is there that any of these decisions had to do with race? I think that the evidence that's showing is you have a situation where he is the only certified driver. He is brought in by Captain Clay with the assurance that he's going to be the regular driver of truck 19. Then what happens is as soon as he comes in, two individuals, African American, who are not certified, in violation of the general order, he designates them. I hear you on the not certification, but it sounds like Captain Clay didn't really understand or follow the certification process. Judge, I disagree with you on that. I think he was the fox in the hen house with regard to that. I think we should be able to present that before the court. I shared Judge Kirsch's question. What evidence is there of that other than a presumption that I'm not prepared to apply that any time a person of one race is the supervisor and brings in other people of that same race, there's a racist reason for it. He did say that it would be good to have more than one person qualified to drive truck 19. Usually you see some other signals that the person has a racial motivation. Well, the thing that you can say is this. The evidence was that these two individuals, Sledge and the other individual, were friends of his, and they clearly were not certified to drive these trucks. But they worked on their certification. They eventually get their certification. I think that's okay, but for the period in question, they shouldn't… He didn't have a certification either. He had this whole argument that he's grandfathered in. And everyone acknowledged, that was uncontroverted, Judge, that he was grandfathered in. Well, there's some confusion about it in the record until he comes back from his vacation. Well, but he was grandfathered in on that. He didn't need to get an FSVO. So, hypothesis one, invidious racial discrimination. Hypothesis two, just indifference or carelessness on the part of the captain. Well, Judge, I'm sorry. I didn't mean to interrupt you. No, no, no. Go ahead. How can you claim that he was just carelessness? I can't. There was no evidence. When I took his deposition… It's his burden to show that race is the reason. Right. Right. And when I took his deposition, I specifically asked Captain Clay about that. Were you cognizant about the requirements of the… Yes, I was. Did you know, yes, that in order to operate Truck 19, you had to be certified on Truck 19? You couldn't be certified on a hook and ladder and then come back and drive the truck. Right. Right? And to say that, well, I forgot. This is a man who received the status of captain in the fire department and is saying, well, I forgot about it? I don't think so. I don't think so at all. So I'm beyond my… Well, I have six minutes. I'm sorry. So I don't think that that was the case. I think you have a situation here, and to answer your question, Judge, is that he knew about it, he disregarded it, he had these two friends that he wanted to go ahead and give them the opportunity to drive the truck, and he did it. When my client went to him and said, hey, you can't do that. These individuals aren't certified. He said, I could do whatever I want to do. Now, if we went and took the converse of the situation, what if we had a situation where Mr. Captain Clay was Caucasian? I'm still not sure what it would have to do with race. Well, I disagree with you, Judge. I really do. I really think it did have to do with it. It had everything to do with race. And you look in terms of how he's the only Caucasian on the third shift, only one, and how he was treated on the third shift compared to other African-American firefighters, I think you can imply that race was the factor. I don't think it was mere negligence whatsoever. I reserve myself for four minutes for rebuttal. If you have any questions about the other count, I'd be glad to address them. Otherwise, I'll reserve my time. Thank you. Mr. Merrill. May it please the court. Stieglitz, a white firefighter, argues that he was racially discriminated and retaliated against when he had to share driving responsibilities with two of his black colleagues. He does not claim that anyone ever made racial comments to him. He does not claim that there was favoritism of black firefighters generally, either in his firehouse or in the CFD more broadly. He admits that only one of his superior officers, Captain Clay, is black, and it was Captain Clay who first recruited him to drive. And the CFD driving time records objectively show that even with the driving records rotation in place, Stieglitz drove as much or more than his black colleagues. Rather than present evidence of discrimination, Stieglitz is simply upset that he had to share responsibilities with two black colleagues, the opportunity to earn a portion of the supplemental compensation that comes with driving a firetruck, ignoring the fact that such a rotation was in the operational best interest of his firehouse. The district court did not err in granting submarine judgment for the city. For his discrimination claim, Stieglitz presents no background circumstances to infer that the city is inclined to discriminate against white employees, no material adverse employment action, no better treatment of similar situated employees, and no showing that the city's nondiscriminatory motives for the driver rotations were protectual. What about the city's failure to recognize that he was grandfathered in for this particular certification? In this instance, this was an investigation that went up through the ranks of Internal Affairs Division. This all happened within the first year of this general order being in place, and clearly there was a lot of confusion between what this general order, in fact, actually meant. I think one of the facts that's important is Stieglitz emphasizes in his brief that Captain Clay never checked the driving certifications of Sledge or Lindsey Turner, but he fails to acknowledge that Captain Clay also never checked the driving certifications of Stieglitz. So on that front, he treated both his white and black drivers equally. Can I ask you a factual question? There's reference a couple of times in the record to the investigator opening a total of 35 files. Is that 35 files just about the Stieglitz situation, or is that 35 files of miscellaneous people throughout the fire department who might have had this issue? I believe that is about this issue throughout the department about uncertified driving that was brought to their attention. So it wasn't just a Stieglitz 35 people? I'm not actually 100% positive of that fact, but I don't believe it was just about the Stieglitz case. Okay. Thank you. Another fact that the appellant emphasizes in his brief is that Captain Clay temporarily allowed, with the permission of his superior officers in the fire department, for Sledge and Lindsay Turner to drive the truck, even though they were only certified to drive a different vehicle type. But he fails to acknowledge that Captain Clay also had Stieglitz drive a different type of vehicle, a collapsing rig, that he wasn't certified to drive. So again, Captain Clay treated all three firefighters similarly by allowing all three to drive a vehicle for which they lacked certification. Regardless of whether Captain Clay should have allowed such certified driving, that's not the issue before the court. In these various instances of uncertified driving, none of them show that black firefighters were treated materially better than the white firefighters. And so there can be no evidence of discrimination, and the court did not err in granting summary judgment on that claim. To briefly touch upon the retaliation claim, that is also meritless. The only argument he advances in support of causation between the alleged complaint and his temporary driving prohibition is that the timing was suspicious. He explicitly testified in his deposition, Stieglitz, that when asked, quote, what led you to believe that driving privileges were suspended in retaliation for you making this complaint? Answer. I believe it was retaliation because it was right after I filed the racial discrimination claim. Question. Any other reason? Answer. No. Under this court's case law, suspicious timing is insufficient to create an inference of causation, except when there's potentially only a few days between the protected activity and the adverse action. In this case, there was four months between the original complaint and the decision to temporarily halt Stieglitz's driving privileges, and two months between the interview with investigator Renucci and the decision to temporarily stop him from driving. This court has said in case after case, including Milligan and Nagasaki, that two months is too attenuated to constitute suspicious timing on its own. Moreover, not only is suspicious timing generally insufficient to support a claim, but the fact that Stieglitz is driving isn't even suspicious. Stieglitz was the one who informed investigator Renucci that he lacked the FSVO certification, which information prompted an ongoing investigation at that time into whether Stieglitz was properly certified to drive. Notably, as the judge pointed out, the file wasn't just open into Stieglitz, but it was open to Stieglitz, Lindsay Turner, Sledge, Captain Clay, and many supervising officers who allowed such uncertified driving. It was this investigation that was the intervening proximate cause of his brief pause on Stieglitz's driving privileges, and it was ordered by Internal Affairs Assistant Commissioner Malik, not by Captain Clay or any of Stieglitz's direct supervisors. Although the investigation by Internal Affairs ultimately concluded that people in Stieglitz's position could drive without the SVO certification, that finding does not imply that Internal Affairs officials were not acting on earnestly held non-retaliatory beliefs at all times. And on one final point, Stieglitz's argument can best be described as kicking up dust, trying to obscure what are very clear cut material facts here. A good example, in both his deposition and in his response to the city's statement of material facts, he admits that neither Captain Clay or Battalion Chief Kane had any role in the decision to prohibit him from driving. In his deposition, he was asked explicitly, do you believe that Captain Clay had a role in the decision to suspend your driving privileges? And he responded, no. But you wouldn't know that uncontested fact from his briefing or his arguments today here in court, where Stieglitz repeatedly implies that it was Captain Clay who paused Stieglitz's driving privileges, presumably in an effort to imply some type of connection between his complaint about Captain Clay and his brief inability to drive. In the end, however, there is no evidence of causation and the district court did not err in granting summary judgment. Unless the court has any further questions for these reasons, the judgment should be obtained. Thank you, Counsel. Thank you. Anything further, Mr. Handler? Judge Wood, in connection with your inquiry, that wasn't just confined, that was 35 or you're talking about not just confined to Stieglitz. Thank you. All right. All right. So this is not contrary to what Mr. Merrill indicated to you about just sharing the right. They shouldn't have driven, period. Okay. So it's not just a sharing situation. They shouldn't, they were precluded during the period until they got their certifications from driving. Now he also mentions, basically he's saying, well, you got to be successful. You have to present direct evidence of discrimination. That's not what the standard is. If you look at Artis versus Werner, the court's well familiar with it. It's not just a direct evidence case. It's the entire evidence here. When you see the entire evidence, you'd have genuine issues and material facts with regard to both counts. And he said, he made reference about, well, Stieglitz did drive as much. That's not what his affidavit said. His affidavit clearly said that he didn't drive as much. There was a question of fact about that. So again, Judge Seeger weighed the evidence, found against him. But there was a genuine issue of material fact on that subject. And this is not a situation that Mr. Merrill is making about confusion about the general order. The general order came in. It was crystal clear. If you weren't certified to drive a particular truck, you couldn't drive it. Period. There's no confusion. There was no evidence introduced in this case about confusion. Judge Seeger didn't even make reference about that. You're talking about, about Stieglitz driving. He made reference, well, he was told. The evidence was that Clay told him to drive it, and Stieglitz told him, I'm not authorized to drive this truck. That's what the evidence was. It was not a truck. It was a car or something like that. But it wasn't that. Treated better? He makes the subject about treated better? Well, let me ask you this. How, you don't think that a situation where two individuals who weren't authorized to be able to drive a truck, get to drive it, get the special, the driver differential compensation for it, and to an individual who was told that he was going to be the permanent driver, the regular driver? Well, see, the case seems to be a bit about a misunderstanding on what that might have meant. He could have been the permanent driver, but not the 100% driver. He could have been permanently on a third of the trips or something. Okay, but if he was the permanent driver, then only in the cases where he either is on furlough or he's on a situation of vacation. Well, that's what he interpreted it as. I'm saying that's not the inevitable. Well, but we also introduced an affidavit of a battalion chief who said that was the case, too. So there, again, is another issue of fact. All of this sounds like something you would raise in a labor arbitration. I still haven't heard an answer to the question, what evidence is there that this has anything to do with race? You say they made a mistake, ergo race, and that just sounds like a non-sequitur. Judge, I don't say it was a mistake. I'm not saying it's a mistake. I'm saying it was deliberate, okay? There is no evidence there was a mistake. So, you know, you have a situation. Thank you, counsel. The case is taken under advisement.